IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| CONNIE KELLEY, WILLIAM KELLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, <br><br> Defendant, | 2:25-CV-01298-MJH |

OPINION AND ORDER

Plaintiffs, Connie Kelley and William Kelley, filed the within breach of contract (Count I), statutory bad faith (Count II), and promissory estoppel (Count III) against Defendant, Allstate Vehicle and Property Insurance Company. (ECF No. 1-7).  Allstate now moves to dismiss Counts II and III pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 7).  The matter is now ripe for decision.

Following consideration of the Kelleys' Amended Complaint (ECF No. 1-7), Allstate's Partial Motion to Dismiss (ECF No. 7), the respective responses and briefs (ECF Nos. 8 and 13), and for the reasons stated below, Allstate's Partial Motion to Dismiss will be granted.

I.  Background

The Kelleys allegedly held a homeowners insurance policy issued by Allstate (the "Policy"). (ECF No. 1-7 at ¶ 3).  The Kelleys aver that, on or about June 26, 2024, their property sustained damage from heavy winds, wind debris, and a tornado. *Id*. at ¶¶ 6-7.  The Amended Complaint asserts that, due to storm damage to the roof, the Kelleys' property sustained water intrusion and water damage to the property's interior. *Id*. at ¶ 10.

The Kelleys allege that the Allstate Policy provided coverage for property damage including dwelling, other structures, and emergency mitigation/remediation work. *Id*. at ¶ 14. The Kelleys aver that Allstate partially denied coverage for their property damage and/or failed to fully indemnify the Kelleys without a reasonable basis for doing so. *Id*. at ¶ 16. In addition, the Kelleys allege that, in compliance with the terms of the Policy, they sought and received permission to undertake emergency water mitigation/remediation at their property. *Id*. at ¶¶ 19-20. The Kelleys aver they relied on Allstate's permission and retained a company to perform said mitigation/remediation. *Id*. at ¶ 21. Following the water mitigation/remediation services, the Kelleys allegedly submitted the bill to Allstate for reimbursement, but Allstate refused to fully indemnify the Kelleys in whole or in part. *Id*. at ¶ 22.

II.     Relevant Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief [*5] above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 U.S. Dist. LEXIS 44192, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair

3

prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

   III.    Discussion

        A.  Bad Faith (Count II)

Allstate contends that Count II should be dismissed because the Kelleys fail to plead sufficient facts to state a plausible claim for relief under Pennsylvania's bad faith statute (42 Pa.C.S. § 8371). Specifically, Allstate maintains that the Kelleys' bad faith claim lacks factual averments to support the Amended Complaint's conclusory bad faith allegations. In response, the Kelleys argue that they have sufficiently alleged that Allstate's claims handling was not in good faith and that they need discovery and investigation to develop a factual record in support.

        The Pennsylvania bad faith statute provides, in its entirety:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
>    (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
>    (2) Award punitive damages against the insurer.
>
>    (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d

4

Cir. 2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994).  Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured."

"Generally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).  However, "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto*, 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501).

Here, the Kelleys' Amended Complaint avers Allstate acted in bad faith by:  misleading the Kelleys, failing to effectuate a prompt settlement of the Kelleys' claim, misrepresenting the pertinent facts or policy or contract provisions, treating the Kelleys with reckless indifference, and/or not having a reasonable basis to deny the Kelleys benefits under the Policy.   (ECF No. 1-7 at ¶ 31.  Allstate's arguments are well-taken.  The Amended Complaint includes numerous factual and legal conclusions that fail to inform both Allstate and the Court of a plausible basis for a bad faith claim.  Instead, the gist of the Kelleys' bad faith claim involves a difference between the Kelleys' and Allstate's valuations and/or application of the terms and conditions of the Kelleys' Policy.  The Amended Complaint lacks sufficient details to move the needle from a "low-ball" value to conduct that would plausibly rise to the level of bad faith.  The Amended Complaint instead pleads essentially a difference in dollar value, accompanied by conclusory statements without adequate factual context.

5

Accordingly, Allstate's Motion to Dismiss the Kelleys' bad faith claim will be granted, without prejudice. Because the Court cannot conclude that amendment of the bad faith count would be futile, the Kelleys will be granted leave to amend Count II.

B. Promissory Estoppel (Count III)

Allstate next argues that the Kelleys' promissory estoppel claim fails as a matter of law, because the Policy at issue constitutes a valid contract. The Kelleys contend that they have adequately alleged a promissory estoppel claim, and that said claim seeks to hold Allstate to the consequences of its promises/authorizations for water mitigation/remediation.

To maintain a promissory estoppel action, "the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Guerra v. Redevelopment Auth. of City of Philadelphia*, 27 A.3d 1284, 1292 (Pa. Super. 2011) (quoting *Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000)). Under Pennsylvania law, "a promissory estoppel claim can only exist in the absence of a contract." *Iversen Banking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995).

Here, the parties' relations are governed by the Policy's contractual terms. The basis of the Kelleys' promissory estoppel claim is that they had requested permission from Allstate to undertake the necessary emergency water mitigation/remediation repairs, that they were given permission, and that they relied upon said permission. The Amended Complaint avers that their reliance and course of action was "[i]n compliance with the terms of the Policy." (ECF No. 1-7 at ¶ 19). Therefore, the Kelleys' own allegations support that this matter is governed by the Policy, which is the relevant contract in this case. Thus, promissory estoppel would not apply,

6

due to the existence of the insurance policy contract between the Kelleys and Allstate. The factual allegations within the Amended Complaint fall within the scope of said insurance policy contract.

Accordingly, Allstate's Motion to Dismiss the Kelleys' promissory estoppel claim will be granted. Count III will be dismissed. Any further amendment to said claim is deemed futile.

ORDER

For the reasons stated in the Opinion, Allstate's Partial Motion to Dismiss is granted. Count II and Count III are dismissed. Count II is hereby dismissed without prejudice, and the Kelleys are granted leave to amend Count II. Said amendment shall be filed on or before March 5, 2026. Allstate shall respond to either the Amended Complaint or Second Amended Complaint on or before March 19, 2026.

DATED this 19th day of February, 2026.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge